UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELDREED BERRY, et al.,

    Plaintiffs,

v.

LYNN MOORE, et al.,

    Defendants.
                              /

Case No. 2:17-cv-13877

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]**

On November 30, 2017, Plaintiffs Eldreed Berry, Ruth Berry, and Michael Tennon filed their complaint against Defendants the City of Detroit ("Detroit"), Lynn Moore, and John Doe Officers 1–10. ECF 1. Plaintiffs later amended their complaint and named the John Doe officers: Adam Sklarski, C. Moreau, J. Hebner, Roy Harris, Jeffery Wawrzyniak, William Morrison, Joseph Castro, Bashawn Gaines, Sadie Howell, and Ryan Paul ("Officer Defendants"). ECF 12. Plaintiffs sued the Officer Defendants in both their official and individual capacities. ECF 12, PgID 106–07. They brought the thirteen claims under 42 U.S.C. § 1983 for violations of their civil rights.

They alleged that on April 25, 2014, Moore and Harris (1) unlawfully searched Tennon's home and (2) unlawfully seized Tennon's personal property. *Id.* at 119–20. They further alleged that on January 26, 2016: (3) Sklarski maliciously prosecuted Tennon by issuing citations for no license and no insurance; (4) Moore maliciously prosecuted Tennon by charging him with loitering; and Moore, Sklarski, Moreau and

1

Hebner (5) unlawfully detained or arrested Tennon, (6) unlawfully detained or arrested Eldreed Berry, (7) unlawfully searched Eldreed Berry's person, (8) unlawfully searched Tennon's person, (9) unlawfully searched Ruth Berry's vehicle, (10) unlawfully seized Ruth Berry's vehicle, and (11) unlawfully seized Tennon's cash. *Id.* at 120–24. Finally, they allege that on August 15, 2016, Harris, Wawrzyniak, Morrison, Castro, Gaines, Howell, and Paul (12) unlawfully entered Eldreed Berry's home and (13) unlawfully seized his money. *Id.* at 124–25.

On October 15, 2018, the Clerk of the Court entered default against Defendant Moreau. ECF 30. On January 10, 2019, Defendants filed a motion for summary judgment. ECF 33. The Court has reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons below, the Court will grant Defendants' motion for summary judgment.

## BACKGROUND[1]

On April 25, 2014, Defendant Moore and other officers executed a search warrant at 19745/19751 Biltmore. ECF 33-2, PgID 505; *see also id.* at 511–513 (search warrant). Plaintiff Tennon is the owner of 19745 Biltmore. *See* ECF 1-1, PgID 29. The affiant to the search warrant affidavit stated that, on April 24, he observed five drug transactions in twenty-five minutes at the location. ECF 33-2, PgID 512. Nobody was present when officers executed the search warrant. *Id.* at 505. Officers recovered empty "ziplock[]" bags "used for marijuana packaging." *Id.* Officers described the bags

---

[1] The Court reads the evidence in the light most favorable to Plaintiffs, the nonmoving parties. The fact summary does not constitute a finding of fact.

as one bag holding several smaller bags. *Id.* at 506. The inside bags were about the size of a quarter. ECF 34-2, PgID 620. Moore had seen this type of small bag used only for drugs. *Id.*

On January 26, 2016, Defendants Moore, Szklarski, Moreau, and Hebner were traveling through a "special attention high narcotics area" when they observed a man named Jeremiah Rhodes approaching a 2005 silver Kia Sorrento—parked, but running—at 19745 Biltmore; Plaintiff Tennon sat in the driver's seat. ECF 1-2, PgID 31. The car was parked on the driveway, blocking the sidewalk. ECF 34-2, PgID 638. Moore observed Rhodes holding a Ziploc bag of marijuana and Tennon holding cash. ECF 1-2, PgID 31. Moore concluded, based on his training and experience and performance of raids at the location, that Rhodes and Tennon were attempting a drug transaction. *Id.* Officers apprehended both men. ECF 33-3, PgID 516-17. Moore cited Rhodes for marijuana possession and confiscated six baggies of marijuana from Rhodes. ECF 1-2, PgID 31; ECF 34-2, PgID 639–40.

There was an open container of alcohol in the vehicle. ECF 1-2, PgID 31. Moore cited Tennon for "loitering in a place of illegal occupation, a known narcotics location." ECF 1-1, PgID 23. Tennon was also cited for having no insurance and no license. ECF 34-13, 34-14. Detroit police confiscated the Kia Sorrento for forfeiture proceedings and $579 in cash. ECF 1-2, PgID 31.

Plaintiff Ruth Berry acknowledged the notice of seizure of the Kia Sorrento. ECF 4-3. On September 9, 2016, the Wayne County Circuit Court entered a consent

3

judgment of forfeiture in the matter concerning the Kia Sorrento and $579 in cash. ECF 4-6.

Rhodes pleaded guilty to his drug offense. ECF 33-5, PgID 539. Tennon's charges were dismissed because Lynn did not appear at the evidentiary hearing. *See* ECF 33, PgID 497; ECF 34-2, PgID 643–44.

Tennon declared in an affidavit that he was merely hanging out with friends and was not engaging in illegal activity. ECF 34-3, PgID 692. Eldreed Berry also stated in an affidavit that he was present outside Tennon's residence during the January 26, 2016 incident and was arrested and searched. ECF 34-4.[2]

On August 15, 2016, Defendants Harris, Wawrzyniak, Morrison, Gaines, Howell, and Paul executed a narcotic search warrant at 19484 Gilchrist and confiscated $344 in cash. ECF 12-7, PgID 149; ECF 12-8, PgID 150; *see also* ECF 33-4, PgID 534–36 (search warrant).[3] Defendant Castro stated in the search warrant affidavit that he had observed a controlled transaction two days before the search warrant was executed. *See* ECF 33-4, PgID 534–36; ECF 34-15, PgID 976–77 (activity log). Plaintiff Eldreed Berry and other individuals, including minors, were at the Gilchrist residence at the time. ECF 12-7, PgID 149. Officers forced entry into the home after receiving no response when they announced their presence. ECF 12-8,

---

[2] Plaintiffs argue that police found "no marijuana" on "Mr. Berry or Mr. Tennon" during the January 26, 2016 incident. ECF 34, PgID 553. The police report shows that police found six baggies of marijuana on Rhodes's person. The alleged attempted transaction had not yet taken place when police intervened.

[3] Defendant Castro was in training. ECF 12-7, PgID 149; ECF 34-6, PgID 720–21.

4

PgID 150. Eldreed Berry now asserts that he is not a drug dealer and that drugs are not sold in his home on Gilchrist. ECF 34-4, PgID 696.

Plaintiffs seem to allege that the affidavits supporting the search warrants were falsified, ECF 12, PgID 118, but they do not point to evidence showing that the relevant search warrants were falsified.

On May 11, 2016, Plaintiff Tennon filed a FOIA request that asked for Detroit police records concerning 19745 Biltmore and Rhodes;[4] the government responded on October 27, 2016. ECF 34-1. Plaintiff Tennon alleges that he did not know that his home was searched on April 15, 2014 in his absence until he received the results of his FOIA request. ECF 34, PgID 549. Detroit Police's interview notes, however, suggest that Tennon was aware of the search shortly after it took place because he filed a complaint about it. *See* ECF 35, PgID 997.

**STANDARD OF REVIEW**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to show that a fact is, or is not, genuinely disputed, both parties are required to either "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

[4] The FOIA request does not request records related to 19751 Biltmore. ECF 34-1, PgID 572.

5

A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may not judge the evidence or make findings of fact. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir. 1987).

The moving party has the burden of showing that no genuine issue of material fact exists. *Id.* at 1435. Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

**DISCUSSION**

I. <u>Statute of Limitations</u>

Defendant argues that the relevant statute of limitations prevents Plaintiff Tennon from bringing his claims related to the April 25, 2014 search. ECF 33, PgID 490.

The proper limitations period for a § 1983 action is the limitations period for personal injury actions in the state in which the claim arises. *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). For § 1983 actions arising in Michigan, federal courts typically borrow the state's three-year statute of limitations for personal injury actions. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citation omitted). The statute of limitations for

6

claims alleging unlawful search and seizure runs from the time of injury, "when the plaintiff becomes aware of" the alleged violation. *Id.* (citation omitted).

As detailed above, Plaintiff Tennon and Defendants offer conflicting accounts of Tennon's knowledge of the April 25, 2014 search. Plaintiff does not provide evidence that he did not know about the April 25, 2014 search until he received his FOIA records. Meanwhile, records suggest that Plaintiff made a complaint about the search shortly after it happened. ECF 35, PgID 997. Therefore, the statute of limitations bars Plaintiff Tennon's claims regarding April 25, 2014. But even if his April 24, 2014 claims were not barred, Plaintiffs cannot establish Defendants' liability, as explained further below.

II.  <u>Detroit's Liability under § 1983</u>

Defendants next argue that Detroit cannot be held liable because Plaintiffs do not show that the alleged constitutional deprivations occurred pursuant to a municipal policy or custom. ECF 33, PgID 485–86.

Local governments cannot be held liable under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). A municipality can be liable under 42 U.S.C. § 1983 only if its policy or custom—whether made by its lawmakers or by those whose "edicts or acts may fairly be said to represent official policy"—inflicts injury. *Id.* at 694. Local governments can be sued for constitutional deprivations pursuant to governmental custom even if the custom was not formally approved. *Id.* at 690–91. If the custom was not formally approved, Plaintiff must "prove the existence of a widespread practice that . . . is so permanent and well settled

as to constitute a custom or usage with the force of law." *Cash v. Hamilton Cty. Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004) (quoting *Monell*, 436 U.S. at 691).

A plaintiff can show the existence of an illegal policy or custom by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

When a municipal liability claim is premised on an "inaction theory," plaintiff must prove: (1) the existence of a clear and persistent pattern of violating federal rights; (2) the municipality had notice or constructive notice; (3) the municipality tacitly approved of the unconstitutional conduct, "such that their deliberate indifference in failing to act" amounted "to an official policy of inaction," and (4) that the municipality's custom was the "direct causal link" for the constitutional deprivation. *Doe v. Claiborne Cty. ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996).

Any suit for damages against officials in their official capacity is a suit for damages against their government employer. *See Monell*, 436 U.S. at 690 n.55.

Plaintiffs maintain that Detroit has a policy of allowing officers to make "material misrepresentations" on their sworn affidavits. ECF 34, PgID 558. They point to an unrelated case—involving none of the Plaintiffs—in which Defendant

8

Moore had submitted an affidavit in support of a search warrant. *Id.* Moore stated in the affidavit that he performed surveillance on November 25, 2014, even though he wasn't working that day. *Id.* at 558–59. Plaintiffs' argument is not well-taken. In his deposition, Moore explained that he stated the wrong date in error and he had worked to correct the error with Internal Affairs. ECF 34-2, PgID 665–67. A reasonable jury would not find that Moore's misstatement of a date—and subsequent correction of it—would constitute a material misrepresentation that Detroit allowed as a matter of custom or policy. It also would not find that Plaintiffs have demonstrated that Detroit had a clear and consistent pattern of violating rights.

Plaintiffs also argue that Detroit fails to ensure that officers understand its policy on seizures and forfeitures. ECF 34, PgID 559. The argument is unconvincing. Defendant Harris, for example, knew there was a policy, recalled reading it, and knew that Detroit required officers to read it. ECF 34-8, PgID 815–16. He did not actually discuss the policy with his supervisor. *Id.* at 855–56. But without more, a reasonable jury could not find that Detroit's training was inadequate.

Because Plaintiffs do not show an unconstitutional custom or policy, Detroit cannot be held liable. *Monell*, 436 U.S. at 690. And because a suit for damages against the officers in their official capacity is a suit for damages against Detroit, *Monell*, 436 U.S. at 690 n.55, Officer Defendants may not be held liable for Plaintiffs' claims in their official capacities.

III. <u>Officers' Liability Under § 1983 in their Individual Capacities</u>

Defendants argue that Officer Defendants hold qualified immunity from suit. ECF 33, PgID 486.

"[Q]ualified immunity [is] a defense available only to individual government officials sued in their personal capacity." *United Pet Supply, Inc. v. Chattanooga*, 768 F.3d 464, 484 (6th Cir. 2014). The qualified-immunity doctrine "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Id.* at 907 (citation omitted). To defeat qualified immunity, the plaintiff must establish that "a constitutional right was violated and that the right was clearly established." *Id.* The Court looks "first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our [C]ircuit, and finally to decisions of other circuits" to determine whether a right is clearly established. *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002) (quotations omitted).

Regarding Plaintiffs' claims against Officer Defendants in their individual capacity, Defendants argue that the searches and seizures in each of the three

10

instances are supported by probable cause. ECF 33, PgID 496. Under the Fourth Amendment, searches and seizures must be supported by probable cause. U.S. Const. amend. IV. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). "An affidavit must provide the [judge] with a substantial basis for determining the existence of probable cause[.]" *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (citation omitted).

Plaintiffs allege that the January 25, 2014 and August 15, 2016 searches and seizures are unlawful because officers falsified the affidavits supporting the search warrants. ECF 34, PgID 548. An officer may be liable under § 1983 if the officer "knowingly or in reckless disregard for the truth" makes "material false statements" and the statements "establish probable cause for an arrest." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citation omitted). If they are proceeding under that theory to overcome an officer's qualified immunity, plaintiffs must make a "substantial showing" that the officer "stated a deliberate falsehood or showed reckless disregard for the truth." *Id.* (citation omitted).

Plaintiffs argue that the information in the affidavit supporting the April 25, 2014 search is false. Specifically, Plaintiffs contest the veracity of the affiant's statement that police seized 21 grams of marijuana on April 2, 2014. ECF 33-2, PgID 511–513; ECF 34, PgID 550. To support their falsification theory, Plaintiffs

11

allege that their FOIA records request turned up no corroborating documentation for the April 2, 2014 raid. ECF 34, PgID 550. Without more, Plaintiffs' pointing to mere absence of a record is unconvincing. The absence of a document is much less probative than affirmative evidence. Plaintiffs do not present additional evidence, such as a discrepancy in the police's activity logs on April 2, 2014, or a record showing where the affiant officer was. Without more proof, the Court does not find a genuine dispute of material fact that Defendants' April 25, 2014 search violated clearly established law.

Regarding the August 15, 2016 incident, Plaintiffs allege that the search and seizure of money occurred for no legal reason. ECF 34, PgID 569. The argument is unconvincing. Castro's affidavit in support of the search warrant stated that he witnessed a controlled buy by a confidential informant on August 13, 2016. ECF 33-4, PgID 534–36.

Plaintiffs allege further that a reasonable jury could find that Defendant Castro falsified his statement that he witnessed a controlled buy because "[the controlled buy] is not listed in the activity log" and because the activity log does not show that the confidential informant exists. ECF 34, PgID 569. But the activity log clearly shows Castro asking the confidential informant to conduct a controlled buy of marijuana on August 13, 2016. ECF 34-15, PgID 977. Absent other evidence, a reasonable jury would not find that Castro falsified his account of the controlled buy in his affidavit.

According to the evidence, the searches and seizures (of either cash or possible drug paraphernalia) on April 25, 2014 and August 15, 2016 were executed pursuant to warrants supported by probable cause. Officer Defendants therefore did not violate clearly established constitutional rights and are entitled to qualified immunity as to those incidents.

Plaintiffs also fail to show genuine issues of material fact regarding whether Officer Defendants violated clearly established constitutional rights during the January 26, 2016 incident. Tennon was sitting in the car when Defendants observed him and Rhodes attempting a drug transaction. ECF 1-2, PgID 31. The car was running at the time and was parked in the driveway, blocking the sidewalk. *Id.* Operation of a vehicle requires insurance and licensing. Plaintiffs' claim that Defendants maliciously prosecuted Tennon by issuing him loitering, no-insurance, and no-license violations is therefore contrary to the evidence. ECF 34, PgID 566–68 (Plaintiffs' claims).

Plaintiffs' allegation that there was no probable cause supporting Tennon's and Eldreed Berry's arrest or the search and seizure of the cash and Kia Sorrento on January 26, 2016 is also contrary to the record evidence. According to the evidence, officers believed they observed an attempted drug transaction. In that scenario, probable cause could support arrest, search, and seizure of drugs, cash, and the vehicle in which the transaction was about to occur.

For the purposes of resolving the summary judgment motion, the Court accepts as true Tennon's assertion that he was not engaging in illicit activity and Eldreed

Berry's statement that he was also present, not engaging in illegal activity, and was handcuffed. Even assuming those facts are true, officers did not violate clearly established constitutional law. They observed Rhodes, marijuana in hand, approaching Tennon, who had cash in his hand. Rhodes pleaded guilty to his drug offense; the evidence does not support the possibility that officers fabricated the entire incident.

Plaintiffs seem to assert that Tennon's and Eldreed Berry's statements render the officers' perceptions false, and therefore no probable cause existed. Not so. If Tennon's account is true, then Rhodes was not approaching him to undergo a drug transaction. But it was reasonable for officers—seeing Rhodes walk in Tennon's direction with drugs and seeing Tennon with cash—to conclude that a transaction was about to occur and take steps to arrest the men and seize the drugs, cash, and vehicle where they believed the transaction would occur. They did not violate clearly established constitutional law by doing so. Similarly, if Eldreed Berry's account—that he was present and was handcuffed despite not engaging in illegal activity—is true, it would still be reasonable for officers to apprehend and search the persons of all parties present to an apparent impending drug transaction.

Plaintiffs do not raise a genuine issue of material fact as to whether Officer Defendants violated clearly established constitutional law. They therefore cannot overcome the Officer Defendants' qualified immunity.

The Clerk of the Court has already entered default judgment against Defendant Moreau. ECF 30. The Court will now enter summary judgment in favor of Detroit and the remaining Officer Defendants.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [33] is **GRANTED** as to Defendants the City of Detroit, Lynn Moore, Adam Sklarski, J. Hebner, Roy Harris, Jeffery Wawrzyniak, William Morrison, Joseph Castro, Bashawn Gaines, Sadie Howell, and Ryan Paul.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **CLOSE** the case.

**SO ORDERED.**

    s/ Stephen J. Murphy, III
    STEPHEN J. MURPHY, III
    United States District Judge

Dated: July 25, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 25, 2019, by electronic and/or ordinary mail.

    s/ David P. Parker
    Case Manager